## National Linseed Oil Company v. Daniel McBlaine.

1. REASONABLE CARE—*Exercise of, a Question for the Jury.*—The question as to whether a person is in the exercise of reasonable care, at the time of receiving an injury, is one of fact for the determination of a jury; and its conclusions in a case of conflicting evidence must be treated as final.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the March term, 1896. Affirmed. Opinion filed April 27. 1896.

GURLEY & WOOD, attorneys for appellant.

C. M. HARDY, attorney for appellee.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The appellee was in the service of the appellant, which operated a mill for the manufacture, as its name indicates, of linseed oil.

Among the duties imposed upon appellee by such service, was that of oiling certain machinery, and the suit was brought and judgment recovered for injuries sustained while so engaged.

The declaration alleged that appellant failed to furnish a reasonably safe oil can for appellee's work; that appellee objected; that appellant promised to furnish him, within a reasonable time, with a suitable can, reasonably safe; that appellee relied on this promise, and proceeded with his employment, and by reason of the defective can he was using, received his injuries. The failure to furnish a reasonably safe oil can under such circumstances constituted the claim of appellee, upon which the recovery was had.

We think the jury were clearly justified in finding that the can with which appellee was at work when the accident happened was not of a reasonably safe kind to do the work. It was described as " a can fifteen inches around the bottom, and ran up tapering to the spout, about nine inches long altogether, including the spout, with a spring in the bottom that you had to press on to force the oil from it, and was otherwise mentioned as a squirt can."

As we understand it to have been, it was in form like the small cans common in domestic use for oiling sewing machines, and operated by a pressure of the thumb of the hand in which it is held upon the bottom, which yields to pressure and springs back when the pressure is relaxed.

The appellee testified that he had worked for the appellant two or three years, performing what would perhaps come under the heading of a general laborer's duty, when he was directed to make it his business every day to oil certain of the shafting and gearing, and was furnished with

Nat. Linseed Oil Co. v. McBlaine.

the kind of oil can already described to do the work with. Thinking that the can was not fit for that work, he borrowed from some other employe in the mill a can with a long spout and a handle, and did the oiling which he had been directed to do. Before the time came for repeating the duty he told the superintendent that he was not provided with the proper kind of can, and asked for one with a handle and long spout from which the oil could be poured, like the one he had borrowed, and was promised by the superintendent that such an one should be got for him. Under repeated requests for another can, accompanied always by promises of one, the appellee continued to perform the work with the can that he had been enabled to borrow. There came a day, however, when that can could not be had, and upon a repetition of complaint and request to the superintendent, the appellee was told to do the best he could with the squirt can for that occaison, and until a new can could be got. In so doing, and while reaching over a revolving shaft to oil the gearing to one of a pair of mitre wheels, the spout of the can caught in the gearing and his hand was jerked between the cogs and the injury done.

The essential facts so testified to by the appellee, were not uncontradicted, but the conclusion of the jury upon the conflicting evidence must be treated as final.

The shaft and gearing which the appellee was engaged in oiling at the time of the injury, were suspended by hangers from the ceiling of the room, which was about thirteen feet high, and could only be reached by a step-ladder, or other means that would raise a person above the floor. On the occasion in question, the floor under the machinery was covered with oil cake piled about five feet high, which prevented the use of a step-ladder, and upon such pile of oil cake the appellee climbed and was standing when doing his work. This condition of oil cake being piled upon the floor seems to have not been uncommon, and does not seem to have of itself increased the hazard of the work, it being dry and hard, and reasonably safe to walk about upon.

Counsel for appellant says in his brief: " The defense

was, among other grounds, that, as a matter of fact, appellee was using a long-spouted can at the time he was injured. That even if he had been using a squirt can, this was a suitable and reasonably safe can with which to do the work. That appellee was not exercising due and reasonable care for his own safety, in that he might have stood upon the west side of the main shaft, upon the cake pile, and performed the work in perfect safety; instead of which he negligently and carelessly stood on the east side, and reached over the gear wheels in oiling the point G. That had he chosen to stand on the west side he might have used, with perfect safety, a cup, or the palm of his hand, or any other kind of receptacle for oil; and the squirt can was a perfectly safe appliance for that work."

Except as to the point that the appellee might have stood upon the cake pile on the west side of the main shaft, and there performed the act of oiling the particular gearing at which he was engaged, with more regard to his own safety than by standing where he did when hurt, there would be nothing in the position of the appellant of which we would be inclined to say more than that the verdict of the jury was a final settlement thereof.

The evidence showed that the main shaft of the factory extended from north to south through the room, and passed through and operated a mitre wheel, the cogs of which fitted into those of another like wheel which was supported at the end of another shaft that ran east and west, and came to within the distance of half the diameter of the first wheel, or about fifteen inches, from the main shaft. This second shaft, which ran from east to west, was operated from the main shaft, through or by means of the two mitre wheels meshing or working into one another.

The appellee stood, when hurt, upon a pile of oil cake on the east side of the main shaft and reached westwardly over the main shaft and across the second wheel, a distance of at least fifteen inches, in endeavoring to oil the box beyond in which the shaft that supported the wheel turned.

It is plain, that everything else being equal, it would have

been safer for the appellee to have stationed himself on the west side of the main shaft when attempting to pour oil into the box indicated.  But it is made to appear that at a distance of a few feet west from the main shaft there was operated from the second shaft a belt that ran north and south and slantwise from the shaft through the floor, and into the cake-mill room below where it operated machinery for grinding the oil cake.  The cake pile extended about three feet west of the main shaft, and to within four to six feet of that belt; and it was testified that with a person stepping about on top of the end of the pile, as he would be when at the gearing or box, which appellee was engaged in oiling, there was danger of the pile sliding away and throwing the person who might be upon it into the belt, and that it was safer, as well as more convenient, under such circumstances, to do the oiling from the point where appellee stood than to go to the west side of the main shaft, where the one so engaged would be near the end of the pile.  It is manifest that with the cake so piled upon the floor, a step-ladder could not be used, and we think that, all the evidence considered, the conclusion of the jury that appellee was in the exercise of due and reasonable care for his own safety in performing the work from where he stood at the time, should not be disturbed.

The verdict of $5,000 that the jury gave, was unquestionably excessive, and the learned trial judge, in a most commendable exercise of his power, required it to be remitted down to the sum of $2,500, as a condition to not allowing a new trial on that ground.  From a careful consideration of the evidence concerning the extent of appellee's injuries, we regard the judgment for that sum as large, but having great confidence in the calm judgment of the trial court who saw the appellee's injured hand, and heard the testimony as to the extent of his incapacity and suffering, we refrain from a reversal of the judgment on that ground alone, there seeming to be nothing else in the record upon which a reversal can be predicated.

Complaint is made of the admission of what is called im-

proper evidence on the part of the appellee; and also, of the refusal by the trial court to give the last eight of the twenty-three instructions offered by the appellant, the first fifteen of which offered instructions were given.

The questions of law raised by the errors assigned upon which such complaints are based, do not, in our opinion, demand either time or space to discuss.

The judgment of the Circuit Court is affirmed.